Services, the appellant. Mr. Garen, why don't you just give us one minute, make sure we've got the opposing counsels all set and that everybody's ready to go out here. I'm sorry, I thought you gave me the nod to go ahead. We're anxious to hear from you, but we'll make sure everybody's set here. All right. Mr. Garen, proceed.  I've been paying debt collectors in the debt collection industry since 1973. And recently we have seen the climate change. When I started, everybody identified with debtors. People thought debt collectors were just horrible people. Now as a society, we are seeing the consequences when a lot of people don't pay their bills. Some of us who are fortunate enough to have more than $100,000 in a bank now worry that the money may not be there. Many of us are dealing with unemployment rates that have never been seen in our lifetimes. Was seen in my mother's lifetime. She's 90. You're speaking to somebody whose lifetime is shorter than mine. And we're seeing taxpayers come to the rescue. Now, what does that have to do with this? This was a case of a collection agency who was sued for charging both interest and a return check charge on a bounced check. We said that was a wrong interpretation of the law. We said we wanted to obtain precedent. Now, you'll see that the respondent's briefs are full of, well, this was a final judgment. Four trial courts agreed. There's no question that there's liability. Well, in the companion case with these same parties, these same attorneys, same judge, Judge Jenkins, the Ninth Circuit put a published opinion certifying this question to the California Supreme Court. And they said, and I quote, California courts provide no controlling precedent. I would suggest to Your Honors, if there's no controlling precedent, each side has at least a 50-50 chance of winning on the issue because there's no controlling precedent. On January 5th, I brought this to your attention in a letter brief. Counsel, a couple of questions for you. Sure. Let's suppose that we affirm the district court's order here. Okay? Do I understand that proceedings have been stayed in the district court? Yes, they have. So if we affirm Judge Jenkins' order requiring you to be responsible for the cost of notice to the class, will notice be given to the class until after, will notice be given to the class before the California Supreme Court decides that case, which then comes back to our, to another panel of this Court? Actually, under Judge Jenkins' order, notice has already been given to the class. The plaintiff was ordered to pay the notice and then got right of reimbursement. So notice has already been given, Your Honor. There's a question about whether the defendant needs to reimburse them for that. Now, counsel, another question. If you lose in the California Supreme Court and our panel of our Court says, all right, Judge Jenkins is correct, would costs, would the cost of notifying the class normally be charged to you? As part of a judgment, absolutely. This is not a question about whether costs are imposed on a judgment. This is a question about whether we have to pay them in advance. And let's go with the other side of that. Supposing I win at the California Supreme Court and I've already paid this $9,000 to Brandy Hunt to pay for these notice costs. How does my client get their money back? $9,000 is a substantial amount of money. If $16,000 was a substantial amount of money to the Oppenheimer Fund that had assets of $500 million, back when that case was decided, I don't know if they still have that in assets. Certainly $9,000 is a very substantial sum to my client, which is the problem with the order. And the other point ---- Counsel, then, given that we have a decision pending in the California Supreme Court and the Court's accepted that, so it appears that we will get, one way or another, we'll get a decision from the California Supreme Court. That is correct. Is there any reason why this Court should decide this question at this point? Well, yes. If it's a decision by the California Supreme Court, either imposing liability or not imposing liability on your client, resolve the question. If you win there, then you don't owe the money. If you lose there, then you owe the money. Well, that's one way of looking at it, but there are broader issues to it. One of the points I'm going to make, and I was just about to make, was I think that the order itself was an abuse of discretion because that appeal was pending in the Ninth Circuit. At the time, Judge Jenkins made the order that we pay it. And I think we need to look at something a little bit broader. The reason why I would urge this Court to make this ruling now is because I think that order was wrong, whether we win or whether we lose. It was the wrong timing, and I think it's a matter of ---- Counsel? Yes? I wanted to touch the question for you. Aren't there a lot of district court authorities, not the Ninth Circuit, which I think hasn't spoken on it, but aren't there a lot of courts that have held that once a district court makes a determination of liability, it can transfer the notice cost to the defendant? Yes, there are many of those opinions, Judge Gould, and my point is that in each of those cases that were reported and cited, they were resolutions of issue of fact, which are much more difficult to appeal. I'm saying in this case it was an abuse of discretion under these facts, which I'll agree are somewhat unusual because of the two appeals. Under these facts, it was an abuse of discretion to order us to pay those costs while this appeal was going. And I was ---- Well, go ahead. I was just going to say it seems to me the issue is whether a district court having determined liability subject to having an appeal can shift the notice costs at that point. Well, and under the ---- I'm sorry? You seem to be suggesting they might be able to shift notice costs in a fact-intensive case, but it's an abuse of discretion to do it if it's a legal issue. Well, I was suggesting that as one standard under the facts of my case. I think it is wrong for the district court under the Eisen opinion. Our U.S. Supreme Court has said notice costs are a cost of the plaintiff. They have to pay them. There are many district courts that have been shifting that burden to the defendant. It doesn't mean that they were right, Judge Gould, in doing so. I'm saying my argument is that they are all wrong in doing so. Our Supreme Court had ---- because our Supreme Court has said so. And I'm saying even more so under the unique facts of this case, it is especially wrong because there was an appeal pending on which there is no precedent. Thank you. Did I answer your question? Yes, I said thank you. I'd like to reserve the rest of my time. That's fine. And I'll allow you the two minutes. I do have one last question. In your brief, at the very end of your brief, you also talked about a cost of nearly $180,000 for notice to a different subclass. I couldn't see any reference to that in the district court's order. He was assuming a class of $22,000. Where did the $180,000 come from? I'm glad you asked. Let me explain that. Part of my argument is the judge, the largest class certified by the judge was under 12B3 or 23B3. Excuse me. Those were the parties, the check writers, who wrote a check, got a notice, and never paid anything. Right. So they don't have actual damages. They don't have actual damages. Okay. Now, but I didn't see any part of Judge Jenkins' order that ordered notice to that part of the class. You're correct. There's nothing in the order that says that. You asked me where I got that from. Right. Okay. Is there anything before us, then? Is there anything that we have to decide? Yes, I think there is. This is what I was saying, is that because under Fair Debt Collection Practices Act, no equitable relief is allowed, when Judge Jenkins certified that class of people who never got the notice under 12B2, that was a wrong certification. They had to have been certified under 23B3. And that's when you would have the $180,000. Okay. But that goes to your argument that Judge Jenkins has certified the wrong class. He certified them. Yeah. He should have certified the people who didn't pay anything under 12B2, and he should have certified them under 12B3. He certified those who didn't pay anything under equitable relief when their only recovery is money, which meant it should have been under 12B3. Okay. Did I answer your question? I think so. Thank you. I have a question on that one, Counsel. Isn't that issue an issue that normally would be raised after a final judgment is issued? Yes, you're correct, Your Honor. And the reason I raised it here is there, as my opposition has pointed out, there are really no clear guidelines about the scope of an appeal of a class notice payment order. And so I, out of being cautious, put as many reasons as I could instead of limiting myself. I don't know whether it certainly could have been brought as a final judgment, Your Honor. I thought it could be brought here. I may be wrong. I could find no precedent, and I don't think they could either. Okay. Thank you. Thank you. Good morning, Your Honors. I'm Paul Ahrens. I represent Brian Castillo, Brandy Hunt, and the certified class. May it please the Court. First, I want to give this, bring the Court up to speed on the procedural framing of this, because I read the briefs in the last few days, and I don't think that this came through. What happened in this case is after this appeal was filed, appellant sought a motion to stay from judge, from the judge, and that stay was granted conditioned upon the appellant posting a $9,000 bond. And so it was that point, which I believe was about the time we were submitting our opposition brief, and before the reply brief was submitted, that actual payment was stayed because the appellant posted a bond. Now, what that, how that relates to the issues before the Court is, I think that affects whether or not there's jurisdiction to hear this in the first place. The appellant keeps referring to Eisen for the basis for jurisdiction, but Eisen simply reflects the collateral order doctrine. The defense never addressed, the appellants never addressed the collateral order doctrine. So I'm not sure there's jurisdiction for this. However, we are here. I'm sorry. You didn't quite finish your sentence. You're not sure there's jurisdiction for what? For the appeal of the class notice order. Okay. Which is the argument that we've got the wrong class, that Judge Jenkins is not. No, no. There's two jurisdictional issues. One is, is there jurisdiction to hear an interlocutory appeal on the class notice order? The second issue is, assuming there is, is there jurisdiction to hear an appeal of the class certification order? Right. That's the first 46 pages or so of his brief. I didn't hear any argument here, oral argument about that. Right. And I mean, I think it's clear there is no jurisdiction. We've briefed that. Counsel, assuming there's no jurisdiction on that, there is jurisdiction, isn't there, to review the order that would shift costs of class notice? I think, I think, I think the appellant could make a case that it comes within the collateral order doctrine. It's simply that in its briefing, I don't think the appellant actually articulated that case. It doesn't matter to me if they didn't quite state the argument. They certainly relied on Eisen at some point. And Eisen is pretty clear. So let me say if if assuming that the shifting of notice issue is properly before us in terms of our jurisdiction under the collateral order doctrine. Is it prudent? What would you say is sensible? Should we try to rule on that now? Or should we defer proceedings until the California Supreme Court and then our other panel answer the liability question? So, Your Honors, I think we should go forward now because the reason there are a lot of completely uniform district court decisions on this issue and no appellate court decisions is that in the normal course of events, by the time you get to a final judgment, this issue becomes moot because at that point you have a final judgment, which includes, among other things, an order, an order for the for the defendant to pay costs. So we're in a unique situation here where I think the Ninth Circuit does have an opportunity to render an appellate opinion on this issue. Why should we do that if we've got pending before another panel a case that's going to resolve the question once and for all? Well, first of all, we don't know exactly what's going to happen with the panel. I mean, in all likelihood, the California Supreme Court, well, we do know what's going to happen with the panel. We don't know exactly what's going to happen with the California Supreme Court. In all likelihood, at some point, they will rule, but they have been known to change their minds. At some point, it's going to be back in the Ninth Circuit. Then the Ninth Circuit will rule. Then it will have to go back to the district court. And we still have to deal with the issue of damages, which is not going to take a long time. But still, once we get back to the district court, if plaintiffs are successful in these appeals, there's still going to be a gap in time between our starting up proceedings and being a final judgment. So you have already issued. Go ahead, Judge. I don't understand why we would have to wait until you go back and cover damages. It seems to me the question is, should we wait until the California Supreme Court and our other panel rule? And if they uphold liability, I guess we could address the transfer order under the collateral order doctrine. But if it went the other way and you lost, I'm not sure it would make sense. Well, I first did not say the notice should have been shifted. But you go ahead and illuminate me. Well, this is, Judge Gould, this is not really an issue I'd given a lot of thought to before. We are anxious to get an appellate ruling on this very issue because it comes up on a regular basis in district court class certification proceedings. Whether we get it now or whether we get it a year or two from now, I don't think it's not something that really I control. We're ready to go forward now. I can't tell the Court that it's going to have any practical impact whether you rule now or whether you rule after the Ninth Circuit remands the Court to the district court because right now matters are staged. So notice has already been given now to the class, to the 22,000 members of the class. Notice has been given. A bond has been posted by appellants. Things are frozen in place. Okay. Who paid? We paid the notice. The reason we thought bond was important is we think there's some question about whether the company is actually still going to be in existence by the time the litigation is done. We understand questions run both ways. Right. He's afraid if he pays, then he's not going to get it back from you. And you're afraid that you're not going to get it back from him. There's a bond posted. If we prevail, at least we'll get reimbursed for the notice. The cost of the notice was just $9,000. I think that's about it. I think it was between — there was a $9,000 bond. I think the actual cost of the notice is somewhere in $8,000 and change. It turned out to be substantially less expensive than anybody anticipated. Well, the numbers, it turned out the class list that we had at the time we were arguing the motion was actually compiled erroneously, and the number of people who actually paid interest was about half the size of the class list we were working on when we were arguing this. Okay. And I want to — I don't know if the Court has any questions about the basis for the Court's authority to make this — make this allocation. I think Oppenheimer, relying on Rule 23d, says that a court has the discretion to make an equitable apportionment of the cost of compiling a class notice list, and that's still good law. Based on Oppenheimer and 23d, all the district court cases we cited went forward and said that a court could allocate the cost of the class notice itself. They saw no distinction, and we saw no distinction here. In the briefs — in the brief of the consumer groups who submitted an amicus brief, they pointed out a second basis, which is at the point in time liability was established, we had — we had — we could have moved for interim fees and achieved the same result because the court would have been within its rights to make an interim fee award, which would have included cost, which would have included notice cost, so that there were two ways to get at this. We only argued before the district court based on the liability having been determined, but we also could have argued based on the fact that there was an interim fee. We had a right to interim fees and costs. Counsel, can you — and this is sort of speculative, but can you illuminate me as to why, when we look out there in the precedent and we see all these district court cases, that we're not seeing any appeals from any circuit in the whole country? We're not seeing any appellate precedent? Well, I think — and this is — I alluded to this before. The posture of these cases is liability has been determined. They're moving towards final judgment, and a court orders class notice paid for in whole or in part by the defendant. For reasons known only to themselves, the defendants don't seek an interlocutory appeal of those orders, and by the time you get to a final judgment, the issue is moot. Because if you get to a final — But there may not be other cases where defendants have, pursuant to the collateral order doctrine, tried to appeal that notice shipping early. I found none. I mean, I can tell you as a practical matter, you know, it's not up to me to examine the defendant's motives, but certainly the amount of energy that has gone into appeal exceeds the monetary stake at issue. And I don't know if that's the case — you know, I don't know if that's the facts in the other cases. I mean, but the fact is I've been unable, we've been unable to find any other defendant who attempted an interlocutory  appeal, and if there's no interlocutory appeal, there's never going to be an appellate decision on the issue. So we think that — That's why we think we're in, you know, we would prefer now, but if the Court wants to defer, it can be done at the time the Ninth Circuit decides the issue is on remand. We think it would be important to have an appellate opinion on this issue because there are none. Anything else, Mr. Arons? Nothing further, Your Honor. Okay. Thank you very much. All right. Mr. Guerin, you have two minutes. Thank you, Your Honor. First of all, I want to say the obvious. There were no appeals in those other cases because the defendants accepted liability. We never did. I want to say, also, I think that if you would — I think it is a good idea to hold to stay doing anything with this until we get a California Supreme Court ruling. As long as after we get it, then you issue an opinion. I think that's — Once the California Supreme Court issues an opinion, of course, our sister panel is likely to issue an opinion very quickly. No, I understand. Wouldn't that moot the question? How could we then issue an opinion? Well, I think you could issue one because it's an error. It's an area of important law. Under the capable of repetition but yet abating view standard? Yes. Okay. Then if that's it, then why should we even wait? Well, you're the ones who asked the question. I didn't tell you an answer. I just gave — I'm just asking the questions. At any rate, I would just assume you go ahead with it. But if you want to wait, I'll tell you the reason why to wait. If we win the appeal in the California Supreme Court, my client does, it will show even further why the order for us to pay it was wrong. I made no oral argument on jurisdiction because I was satisfied with my brief on that. The cost of these appeals were largely as much the plaintiff's fault as ours. We said we want to get this issue up for legal precedent. We did everything we could to get it there, to get precedent. They fought us at every step of the way. That's in my brief, too. Lastly, about the stay, there are two stay orders. They were threatening us with contempt for not paying the $9,000. We sought a stay under the rules. The judge ordered a $9,000 bond. Judge Jenkins did. And that was stayed. After that, Judge Jenkins moved to the Court of Appeal, California Court of Appeal. Case was reassigned to Judge Armstrong. We moved to a stay pending appeal with her. She stayed the action pending this appeal and the one that was then at the Ninth Circuit, now at the California Supreme Court. Sorry for 20 seconds over. Okay. Thank you. We thank both counsel for the argument. And Hunt is submitted.
judges: Canby, Gould, Bybee